# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JOHN R. DUGAN. | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 12 C 9685 |
| | ) |
| CAROLYN COLVIN, Acting | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' cross motions for summary judgment. For the reasons stated below, Plaintiff John R. Dugan's (Dugan) motion for summary judgment is granted, and Defendant Social Security Administration's (SSA) motion for summary judgment is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

## BACKGROUND

In August 2009, John R. Dugan (Dugan) applied for Disability Insurance Benefits and Supplemental Security Income, contending that he has mental impairments and a combination of physical impairments, including arthritis of the knees and obesity. Dugan was denied benefits initially, and his request for

reconsideration was denied. In November 2011, after a hearing (Hearing) before an Administrative Law Judge (ALJ), the ALJ found Dugan had certain severe impairments but had the residual functional capacity (RFC) to perform light work with certain limitations, and the ALJ denied benefits. Dugan's request for review by the Appeals Council was denied in October 2012. On December 5, 2012, Dugan brought the instant appeal from the ALJ's decision. Dugan has filed a motion for summary judgment seeking to have the ALJ's decision reversed, or in the alternative, seeking to have the case remanded for additional proceedings, (P SJ Mem. 20), and the SSA has filed a motion for summary judgment seeking to have the ALJ's decision affirmed.

## LEGAL STANDARD

Pursuant to 42 U.S.C. § 405(g), a party can seek judicial review of administrative decisions made under the Social Security Act. When an ALJ's decision is deemed to be "the final action of the Social Security Administration, the reviewing district court examines the ALJ's decision to determine whether substantial evidence supports it and whether the ALJ applied the proper legal criteria." *Allord v. Astrue*, 631 F.3d 411, 415 (7th Cir. 2011).

## DISCUSSION

An ALJ examines a claim of disability under a five-step process. *Craft v. Astrue*, 539 F.3d 668, 673-74 (7th Cir. 2008). In step one, the ALJ "considers

whether the applicant is engaging in substantial gainful activity." *Id.* In step two, the ALJ "evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement." *Id.* In step three, the ALJ "compares the impairment to a list of impairments that are considered conclusively disabling." *Id.* If the applicant's impairment satisfies "or equals one of the listed impairments, then the applicant is considered disabled" and the inquiry ends. *Id.* If the inquiry continues, in step four, the ALJ "assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work." *Id.* In step five, the ALJ "assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work" and "[i]f the applicant can engage in other work, he is not disabled." *Id.*

In the instant appeal, Dugan argues: (1) that the ALJ failed to make a credibility determination regarding Dugan's allegations, and (2) that the ALJ erred in evaluating Dugan's physical and mental limitations when making an RFC determination.

I.  Credibility Determination

Dugan contends that the ALJ erred by failing to make a credibility finding, relating to Dugan's claim of knee pain and depression. In determining the weight to assign a claimant's allegations, an ALJ must give "'specific reasons' for a credibility finding," and statements "that 'the individual's allegations have been considered' or that the allegations are (or are not) credible" are insufficient. *Golembiewski v.*

*Barnhart*, 322 F.3d 912, 915 (7th Cir. 2003)(quoting SSR 96-7p). When reviewing the ALJ's credibility determination, the court examines "'whether the ALJ's determination was reasoned and supported.'" *Shielder v. Astrue*, 688 F.3d 306, 311 (7th Cir. 2012)(quoting *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008)).

In the instant action, the ALJ failed to provide an adequate credibility determination regarding Dugan's allegations of pain. The ALJ concluded that Dugan "has described daily activities which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations," and that Dugan's "allegations regarding knee pain are out of proportion to the treatment records and lack of treatment for knee pain after 2009." (AR 35). However, the ALJ failed to adequately address the evidence in the record or explain her conclusions in this regard. *See Scott v. Astrue*, 647 F.3d 734, 740 (7th Cir. 2011)(indicating that an ALJ must "build the requisite 'logical bridge' between the evidence and her conclusion")(quoting *Terry v. Astrue*, 580 F.3d 471, 475 (7th Cir. 2009).

The ALJ noted that in an April 18, 2011 medical report (April 2011 Report), Dugan was reported to have full range of motion of bilateral knees and no swelling. (AR 34, 734-35). However, the April 2011 Report referenced by the ALJ also noted that Dugan complained of having knee pain "at times . . . so severe" that Dugan was "significantly limited in [his] ability to walk." (AR 734-35). The ALJ failed to adequately explain why she accepted certain information in the Report as true and yet dismissed the April 2011 Report's reference to Dugan's claimed pain.

The ALJ also referenced Dugan's ability to do chores such as raking leaves in

4

concluding that Dugan's claimed physical symptoms were not credible. However, a review of Dugan's testimony indicates that Dugan indicated only in general terms that he had to do certain chores at times at his place of residence. (AR 61-62). As to raking, which was identified by the ALJ as a determinative factor, Dugan merely stated that he will "rake the leaves sometimes. . . ." (AR 35, 62). Dugan testified that no one supervised him and made him complete the raking in a certain amount of time. (AR 62). Dugan explained he did not need to complete the raking in one day and might take as many as four days to complete the chore. (AR 62). The record does not contain information identifying the area of land that needed to be raked by Dugan within that four-day period. Dugan also admitted that he sometimes assists in cooking meals as a chore. (AR 62). However, again Dugan was not asked to provide specific details to explain the frequency and amount of work involved in the cooking chore. The ALJ, in concluding that Dugan's chores were physically demanding, engaged in speculation outside the record and failed to explain her conclusions.

    Dugan also testified regarding his knee pain at the Hearing. Dugan stated that he had significant pain in his knees and that they were swollen. (AR 56). Dugan further testified that his knee pain had worsened after his stroke and that Dugan was using a variety of drugs to deal with the pain. (AR 56, 59). The ALJ failed to address such claims made by Dugan in making a credibility determination. Although the ALJ is not required to address every piece of evidence in her decision, the ALJ must at least reference some pertinent evidence in the record to adequately justify her

conclusions and cannot merely provide conclusory statements. *See Roddy v. Astrue*, 705 F.3d 631, 636 (7th Cir. 2013)(stating that the ALJ "was required to provide an accurate and logical bridge between the evidence and his conclusions")(internal quotations omitted).

The ALJ also failed to provide a credibility determination regarding Dugan's allegations of depression. The ALJ discussed Dugan's hospitalizations for depression and suicidal ideation and Dugan's treatment with medications and occasional mental health visits. (AR 32, 33, 35, 559, 656, 678). The ALJ also discussed the medical interrogatory completed by Dr. Larry Kravitz (Kravitz) on May 13, 2011 and noted that she gave his opinion great weight. (AR 36). However, the ALJ failed to discuss Dugan's testimony regarding his depression. Dugan testified that he is on Prozac for depression but it is still a problem for him, and that for the last four or five years he has battled extreme depression. (AR 61, 67). It is not clear from the ALJ's decision whether Dugan's testimony was considered. On remand, the ALJ should develop the record concerning Dugan's claims of physical and mental limitations and provide a proper credibility determination with enough clarity to permit meaningful review.

II. RFC Determination

Dugan argues that the ALJ erred in her RFC determination, finding Dugan capable of performing light work. In determining an applicant's RFC, the ALJ "must evaluate all relevant evidence . . . including evidence of impairments that are not

6

severe." *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012).  An ALJ's decision should be upheld "if the evidence supports the decision and the ALJ explains his analysis of the evidence with enough detail and clarity to permit meaningful review." *Id.* at 591-92.

A.  Physical Therapist's Notes

Dugan contends that the ALJ erred by failing to mention or evaluate Dugan's physical therapist's notes from 2009.  Dugan contends that the ALJ relied on the opinions of the state agency physicians in evaluating Dugan's RFC although their opinions allegedly were entitled to less weight because the state agency physicians were not examining physicians, and that the physical therapist's notes show Dugan was incapable of sustaining light work.  The ALJ's duty is to build an "accurate, logical bridge" to her conclusions.  *Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003).  The ALJ concluded that Dugan was capable of light work with certain limitations.  The ALJ supported that conclusion by addressing, for example, Dugan's knee operations in early 2009, his release to return to work in June 2009, his "acute cerebrovascular accident and myocardial infarction in July 2009," and his significant recovery and release by his neurologist and cardiologist to return to work in November 2009.  (AR 31, 34, 485, 489).  However, the ALJ failed to "minimally articulate[] [her] reasons for crediting or rejecting evidence of disability" with regard to the physical therapist's notes.  *Schmidt v. Astrue*, 496 F.3d 833, 842 (7th Cir. 2007)(quoting *Skarbek v. Barnhart*, 390 F.3d 500, 503 (7th Cir. 2004).  For example,

7

in August 2009 the physical therapist noted Dugan had difficulty walking and that his left knee gave way three times while walking 130 feet, and in September 2009 the physical therapist noted that Dugan was able to lift twenty pounds but was unsafe while lifting and that Dugan was unable to crouch or do deep knee bends. (AR 358, 627). The ALJ failed to make clear in her decision whether she considered this evidence in the record, given that the RFC included the limitation that Dugan "can occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl . . . ." (AR 28). Defendant argues that the physical therapist is not a doctor and cannot render a medical opinion. Even if that is true, that does not preclude the ALJ from considering the evidence presented relating to the physical therapist's treatment of Dugan. The ALJ cannot ignore evidence in the record simply because it was not presented by a medical doctor. *See Arnett*, 676 F.3d at 591 (stating that an ALJ "may not ignore entire lines of contrary evidence"). On remand, the ALJ should consider Dugan's physical therapist's notes from 2009.

B. Physical Limitations from Combination of Impairments

Dugan contends that the ALJ failed to explain why Dugan's combination of impairments, including arthritis and obesity, would not limit him to sedentary as opposed to light work. As previously discussed, evidence of Dugan's alleged limitations from knee pain should be analyzed on remand. However, substantial evidence in the record indicates the ALJ properly accounted for Dugan's obesity. The ALJ stated she considered "the cumulative effects the claimant's obesity has on

his other impairments." (AR 27). The ALJ also stated that Dugan "is an obese male," that "[w]hen analyzing the claimant's severe impairments, I considered the effects of the claimant's obesity in assessing his residual functional capacity for work-related activity," and that "[b]ased on the claimant's heart condition, chronic obstructive pulmonary disease, diabetes mellitus, knee problems, and obesity, I have reasonably accommodated him with a light residual functional capacity." (AR 34-35). The ALJ noted that Dr. M.S. Patil assessed Dugan as "moderately obese and in no acute distress" during a consultative examination in January 2010 and that Dr. Lambert noted Dugan was obese during a follow-up in June 2010. (AR 32, 33). Thus, the ALJ properly considered Dugan's combination of impairments.

C. Mental Limitations

Dugan contends that the ALJ erred in evaluating Dugan's episodes of decompensation and limitations in social functioning. The ALJ discussed the May 2011 opinion by Kravitz, and stated that she gave his opinion great weight. (AR 36). Kravitz reviewed Dugan's medical history and daily activity reports and concluded that Dugan had "generally intact mental status functioning." (AR 36). The ALJ also noted that "a consultative examiner found in February 2010 that the claimant had only mild limitations in understanding and memory." (AR 36, 731). The ALJ also concluded that Dugan has mild limitations in social functioning. (AR 27). However, the record is filled with evidence indicating the contrary, such as an argument with

9

an individual at his recovery home, and reports indicating that he was excessively irritable and angry. (AR 748, 750).

The ALJ also concluded that although "[m]entally, [Dugan] was hospitalized 3 times in 2010, . . . a close look at the records reveal that those hospitalizations were related to heroin abuse." (AR 35). However, as Dugan correctly points out the mere fact that he was hospitalized relating to heroin use does not preclude the fact that Dugan was also treated for other mental issues as well. For example, the record shows that during one such hospitalization, Dugan was treated for mental health issues such as severe depression and suicide attempts. (AR 461). Thus, on remand, the ALJ should properly explain her conclusions relating to Dugan's mental limitations.

Based on the above, Dugan has not shown that he is entitled as a matter of law to an award of benefits, but Dugan has shown that the ALJ erred in certain areas and that a remand is appropriate. Therefore, Dugan's motion for summary judgment is granted and the SSA's motion for summary judgment is denied

## CONCLUSION

Based on the foregoing analysis, Dugan's motion for summary judgment is granted and the SSA's motion for summary judgment is denied. This matter is remanded to the SSA for further proceedings consistent with this opinion.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: December 5, 2013